STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

COPY

A.T. CROSS COMPANY :
:
v. : C.A. No. 05-6259
:
SILVON SOFTWARE, INC. :

**COMPLAINT**

A.T. Cross Company ("Cross") brings this action against Silvon Software, Inc. ("Silvon") for breach of contract, misrepresentation, and breach of warranty arising out of the sale of an integrated computer software package that failed to operate as warranted and represented.

**Parties and Jurisdiction**

1. Cross is a Rhode Island corporation with its principal place of business at One Albion Road, Lincoln, Rhode Island.

2. Upon information and belief, Silvon Software, Inc. is an Illinois corporation with its principal place of business at 900 Oakmont Lane, Westmont, Illinois.

3. The amount in controversy exceeds $10,000.00, exclusive of interest and costs.

4. This Court has jurisdiction over the subject matter pursuant to Rhode Island General Laws § 8-2-14 and §8-2-13.

## Facts Common to All Counts

*Nature of Cross's Business*

5. Cross is a major international manufacturer of fine writing instruments, timepieces and personal accessories.

6. An enterprise-level forecasting system, i.e. software that will enable Cross to analyze and predict supply and demand, is critical to Cross's business as Cross changes its business model from manufacturing to importing/exporting.

7. For this reason, Cross was highly deliberative in its selection of a provider of forecasting software and support services.

8. Cross described in detail what functions were necessary to its business in a carefully constructed Request for Information (RFI) to all prospective vendors.

*The Request for Information, Silvon, and the Stratum Solution System*

9. Silvon is in the business of selling computer software for use in business and industry.

10. In November and December 2004, Silvon responded to the RFI by making presentations of its Stratum Solution System (alternately "the Software" or "Stratum System") to Cross.

11. Silvon misrepresented its Stratum Solution System as being capable of performing all of the necessary functions on a completely integrated basis.

12. Silvon did not identify any item of the RFI as a potential area for trouble during its presentations, nor did Silvon advise that the forecast process outlined in the RFI would be unwieldy were it performed using its Software.

13. Silvon asserted that its solution could meet all the requirements of the RFI with minimal customizations.

14. Cross relied on Silvon's express representations that the Stratum System was capable of performing most of the functions detailed in the RFI.

15. Based on Silvon's response to the RFI and express representations made therewith, Cross contracted to purchase the Stratum System from Silvon.

16. Silvon and Cross entered into an agreement whereby Silvon agreed to license and sell to Cross its Stratum System forecasting software suite of products and to provide programming, installation, training, maintenance and consulting services in connection with the license and sale of the Software.

17. Silvon represented that the Software was or could be made capable of performing various tasks suited to the nature of Cross's business without significant customizations.

18. The Software was supposed to be implemented and to go live on or before the first week of May 2005.

19. It wasn't until the system was being implemented that Silvon's technicians presented a more candid picture of the Software's limitations.

20. The consulting services to be delivered under the agreement, particularly the management, implementation and support tasks related thereto, were often delayed or performed in a manner that did not meet the agreed upon schedule for such consulting services.

21. Although the Software was delivered and fully paid for, it was never fully implemented or able to perform the essential functions, which the Software was required to perform.

22. The Software was incapable of adjusting for causals, creating new product forecasts, creating scale forecast per revenue plans, modifying marketing and sales plans, publishing forecast accuracy or implementing a weekly monitoring process. See Cross's Letter to Silvon of August 4, 2005 at 2 (Exhibit A).

23. Many of these functions are standard functions in forecasting software.

24. As a result of the fatal errors and system crashes, the implementation of the Software was unable to go live by the agreed upon date.

*Delivery of the Stratum System*

25. The installation of the Software was an unmitigated disaster for Cross.

26. Despite Cross's best efforts to assist in the implementation process, including the full-time efforts of a Senior Systems Analyst, Forecast Manager and Forecast Analyst, and the allocation of significant additional resources, the Software was incapable of meeting the specified requirements.

27. The problems surrounding the implementation and functionality of the Software and the related issues concerning Silvon's lack of performance were well documented.

28. Cross representatives had several discussions regarding the failed implementation of the Software with Silvon's Vice President of Sales and Marketing.

29. Despite Silvon's efforts to address such issues, Silvon was not able to make the Software function as the parties originally agreed.

30. In April 2005, Cross had no choice but to take the Stratum System off-line and revert to a prior manual process

31. In short, the Software provided nothing of value to Cross.

32. Silvon did not deliver a computer forecasting system which conforms to either the RFI or the parties' agreement.

33. The Stratum System was so riddled with functionality problems that Cross was precluded from any effective use of the system.

34. Cross's payments to Silvon, incurred in connection with the failed installation, include: $44,000.00 in licensing fees, $7,920.00 in pre-paid maintenance fees, and $62,160.77 in consulting fees and expenses.

35. Cross requested reimbursement of all license fees, pre-paid maintenance fees, and consulting fees and expenses.

36. In a letter dated June 15, 2005, Silvon denied any responsibility for the Software problems and refused to refund fees paid by Cross.

## COUNT I
## (Equitable Rescission - Misrepresentation in the Inducement)

37. Cross repeats and incorporates by reference the allegations contained in paragraphs 1 through 36 above, as if set out in full.

38. Silvon misrepresented the Stratum System's ability to timely perform the functions detailed in the RFI in order to induce Cross to enter into the agreement.

39. Cross, to its detriment, entered into the agreement in reliance on these material misrepresentations.

## COUNT II
## (Breach of Contract)

40. Cross repeats and incorporates by reference the allegations contained in paragraphs 1 through 37 above, as if set out in full.

41. Cross fully performed all of its obligations under the terms of the parties' agreement.

42. Silvon tendered a forecasting software suite that was nonconforming to, and in breach of, the parties' agreement.

43. Silvon tendered consulting services that were nonconforming to, and in breach of, the parties' agreement.

44. As a result of Silvon's breach of contract, Cross has been injured in an amount in excess of $114, 080.77 in addition to other consequential and compensatory damages.

**COUNT III**
**(Breach of Warranty)**

45. Cross repeats and incorporates by reference the allegations contained in paragraphs 1 through 44 above, as if set out in full.

46. Silvon warranted that the Software would conform to Silvon's published specifications in effect on the date of delivery and the Software would perform substantially as described in the accompanying Documentation (user manuals and generally available documentation provided by Silvon) after delivery.

47. Silvon further warranted that it would make commercially reasonable efforts to perform the services (programming, installation, training, maintenance and consulting services) in conformance with industry practices.

48. Cross documented numerous defects in the Software.

49. Silvon failed to make commercially reasonable efforts correct all of the defects that Cross documented.

50. Silvon breached its warranty under the agreement. As a result thereof, Cross has been injured in an amount in excess of $114,080.77 in addition to other consequential and compensatory damages.

**COUNT IV**
**(Breach of Warranty of Quality and Performance in Workmanlike Manner)**

51. Cross repeats and incorporates by reference the allegations contained in paragraphs 1 through 50 above, as if set out in full.

52. Silvon impliedly warranted that the services it provided under the agreement would be delivered in a timely and workmanlike manner and comport with those standards of quality recognized in the software industry.

53. The services delivered by Silvon were sub-standard.

54. Silvon breached its implied warranty of quality and performance in a workmanlike manner. As a result thereof, Cross has been injured in an amount in excess of $114,080.77 in addition to other consequential and compensatory damages.

**COUNT V**
**(Breach of Implied Warranty of Merchantability)**

55. Cross repeats and incorporates by reference the allegations contained in paragraphs 1 through 54 above, as if set out in full.

56. The Stratum System was tendered by Silvon to Cross in a condition unfit for its ordinary, intended purpose.

57. Silvon breached the warranty of merchantability implied in the agreement. As a result thereof, Cross has been injured in an amount in excess of $114,080.77 in addition to other consequential and compensatory damages.

**COUNT VI**
**(Breach of Implied Warranty of Fitness for a Particular Purpose)**

58. Cross repeats and incorporates by reference the allegations contained in paragraphs 1 through 57 above, as if set out in full.

59. The Stratum System was tendered by Silvon to Cross in a condition unfit for the purpose for which it was intended.

60. Silvon breached the warranty of fitness for particular purpose implied in the agreement. As a result thereof, Cross has been injured in an amount in excess of $114,080.77 in addition to other consequential and compensatory damages.

**COUNT VII**
**(Breach of Implied Warranty of Integration)**

61. Cross repeats and incorporates by reference the allegations contained in paragraphs 1 through 60 above, as if set out in full.

62. The Stratum System that Silvon tendered to Cross was designed to be a "Component System" consisting of four separate software packages which would be operable on Cross's hardware.

63. Sivon impliedly warranted that the component software systems would work together as a single integrated software package and that it would be operable on Cross's hardware.

64. The Stratum System failed to operate as an integrated system such that Silvon breached the implied warranty of integration. As a result thereof, Cross has been injured in an amount in excess of $114,080.77 in addition to other consequential and compensatory damages.

**COUNT VIII**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

65. Cross repeats and incorporates by reference the allegations contained in paragraphs 1 through 64 above, as if set out in full.

66. Silvon's acts and/or omissions in failing to disclose the true capabilities and limitations of the Stratum System constitute a breach of the covenant of good faith and fair dealing implied by law.

67. As a direct result of Silvon's breach, Cross has suffered damages. As a result thereof, Cross has been injured in an amount in excess of $114,080.77 in addition to other consequential and compensatory damages.

**COUNT IX**
**(Misrepresentation)**

68. Cross repeats and incorporates by reference the allegations contained in paragraphs 1 through 67 above, as if set out in full.

69. At the time that Silvon responded to the RFI, Silvon knew that it could not deliver the functions required of the system with the software that Silvon selected for Cross.

70. Silvon misrepresented its capabilities to modify and enhance the Stratum System to conform to Cross's needs and that the capability to perform demand forecasting functions would be available by May 2005, the agreed upon live date.

71. Throughout the period in which Silvon undertook to repair the Stratum System, Silvon continued to represent that the system was capable of performing those functions required by Cross.

72. Cross justifiably relied on Silvon's representations.

73. As a direct and proximate result of Silvon's material misrepresentations, Cross has sustained damages.

**COUNT XI**
**(Unjust Enrichment)**

74. Cross repeats and incorporates by reference the allegations contained in paragraphs 1 through 73 above, as if set out in full.

75. Cross paid for Silvon's software, maintenance services, and consulting services but received nothing of value from Silvon in return.

76. Silvon appreciated the benefit conferred on it by Cross.

77. To retain payments for the Stratum System would be inequitable because the Stratum System did not work as represented.

78. Silvon has been unjustly enriched by its failure to reimburse Cross for its pecuniary losses on account of the problems encountered with the Stratum System.

79. Cross is entitled to receive reasonable reimbursement.

WHEREFORE, Cross prays that this Court grant the following relief:

(a) Rescission of the contract between the parties and order that all sums paid by Plaintiff be refunded;

(c) Judgment against Defendant for compensatory and consequential damages in an amount to be determined at trial on all counts of the Complaint;

(d) Interest, costs and attorneys fees to Plaintiff; and

(e) Such other further equitable or injunctive relief as this Court deems necessary and proper.

***PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.***

A.T. Cross Company,

By its Attorney,

William R. Grimm (#1938)
HINCKLEY ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903
Tel: (401) 274-2000
Fax: (401) 277-9600

HinckleyAllenSnyder LLP
ATTORNEYS AT LAW

1500 Fleet Center
Providence, RI 02903-2393
TEL: 401.274.2000
FAX: 401.277.9600
www.haslaw.com

*William R. Grimm*
*wgrimm@haslaw.com*

August 4, 2005

***CERTIFIED MAIL, RETURN RECEIPT REQUESTED***
***AND FIRST-CLASS MAIL***

COPY

Michael J. Hennel
President
Silvon Software, Inc.
900 Oakmont Lane
Suite 400
Westmont, Illinois 60559

***Re:*** ***A.T. Cross Company v. Silvon Software, Inc.***

Dear Mr. Hennel:

I represent A.T. Cross Company ("Cross") in connection with Cross' claims against Silvon arising from the Software Agreement (the "Agreement") by and between Cross and Silvon Software, Inc. ("Silvon") dated November 30, 1997. Under the Agreement, Silvon agreed to license and sell to Cross its "Stratum" forecasting software suite of products (the "Software") and to provide programming, installation, training, maintenance and consulting services in connection with the license and sale of the Software (the "Consulting Services"). Silvon represented that the Software was or could be made capable of performing various tasks suited to the nature of Cross' business in the fine writing instrument and personal accessory industry. The Software was supposed to be implemented and to go live on or before the first week of May 2005. Although the Software was delivered and fully paid for, it was never fully implemented nor did it ever perform properly. In addition, the Consulting Services to be delivered under the Agreement, particularly the project management, implementation and support tasks related thereto, were often delayed or performed in a manner that did not meet the agreed upon schedule for such Consulting Services.

The problems surrounding the implementation and functionality of the Software and the related issues concerning Silvon's lack of performance are well documented. In early April 2005, Cross officially cut off Silvon's remote access to Cross' server. In addition, Cross representatives have had several discussions regarding the failed implementation of the Software with Silvon's Vice President of Sales and Marketing. Despite Silvon's efforts to address such issues, Silvon has not been able to make the Software function as the parties originally agreed.



28 State Street, Boston, MA 02109-1775 TEL: 617.345.9000 FAX: 617.345.9020
43 North Main Street, Concord, NH 03301-4934 TEL: 603.225.4334 FAX: 603.224.8350

As you know, Cross is a major international manufacturer of fine writing instruments, timepieces and personal accessories. An enterprise-level forecasting system is critical to Cross' business over the course of the next two years as Cross implements a fundamental change to the way it conducts business by transitioning from a manufacturing based model to an importer/exporter model. For this reason, the company was highly deliberative in its selection of a provider of forecasting software and support services. Cross described in detail what functions were necessary to its business in a carefully constructed Request for Information ("RFI") to all prospective vendors. At Silvon's presentations to Cross staff in November and December 2004, Silvon misrepresented its "Stratum Solution" system as being capable of performing all of the necessary functions on a completely integrated basis. Silvon did not identify any item of the RFI as a potential area for trouble during their presentations, nor did they advise that the forecast process outlined in the RFI would be unwieldy were it performed using their software. They asserted that their solution could meet all requirements of the RFI with minimal customizations. Unfortunately, it wasn't until the system was being implemented that Silvon's technicians presented a more candid picture of the Software's limitations. The system that Silvon delivered and installed was not able to perform the essential functions which the Software was required to perform.

The installation of the Software was an unmitigated disaster for Cross. I will highlight several of the many difficulties that Cross encountered. "Fatal errors" and unexpected system crashes occurred frequently in a variety of situations and in different screens of the application, including "Planner", "Data Administration", "Date Copy", "Graph View" and "Breakdown", all of which slowed the implementation of the Software considerably. The Software also failed to meet the following critical issues identified in the RFI:

- *Adjust for Causals* - Causal factors cannot be "tagged" in Stratum, Textual notation functions are limited to high level dimensional elements and cannot be assigned to transactions or logical intersections of product, customer and time dimensions. Stratum cannot perform event modeling and "profiles" of events cannot be developed, stored and applied to future events.

- *New Product Forecast* – Stratum has no built-in functionality to develop new product forecasts. Common forecasting software features such as new product modeling and automated history re-mapping are not available. No audit log functionality at the dimensional intersection level is available.

- *Scale Forecast per revenue plan* – At almost 5 months into the implementation, there was no mechanism for Stratum to meet Cross' revenue plan requirement.

- *Modify Marketing and Sales Plan* – The "Events" functionality in Stratum does not meet the requirements for modeling, labeling, auditing and assigning.

- *Weekly Monitoring Process* – Weekly forecast comparisons against demand could not be implemented.

- *Publish Forecast Accuracy* – Several industry standard calculations were not available as canned functions in Stratum.

Despite Cross' best efforts to assist in the implementation process, including the full-time efforts of a Senior Systems Analyst, Forecast Manager and Forecast Analyst, and the allocation of significant additional resources, the Software was incapable of meeting the specified requirements. It also became apparent that Silvon misrepresented its technical resources and its ability to implement the Software in a manner which met the specified requirements, causing Cross to incur an irreversible delay in implementing a demand management system. As Cross notified you in mid April 2005, it simply had no choice but to take the system off-line and revert to a prior manual process in its place.

In short, the Software provided nothing of value to Cross. Silvon did not deliver a computer forecasting system which conforms to either the RFI or the Agreement. The Stratum product is so riddled with functionality problems that Cross is precluded from any effective use of the system.

Cross has numerous claims against Silvon, including without limitation, fraud in the inducement, breach of contract and breach of warranty. Cross hereby demands that:

1. Silvon reimburse Cross all sums previously paid - the License Fee ($44,000), prepaid Maintenance Fee ($7,920) and Consulting Fees/Expenses ($62,160.77) incurred by Cross in connection with the failed installation;

2. The Agreement and the license granted thereunder be terminated effective as of May 5, 2005, the date upon which Silvon's remote access to Cross' server was terminated; and

3. Silvon and Cross exchange mutual releases.

HinckleyAllenSnyder LLP
ATTORNEYS AT LAW



Kindly let me know immediately and in writing whether Silvon is prepared to resolve this matter without litigation. Thank you for your immediate attention to this matter.

Sincerely,

William R. Grimm

WRG:rhm

cc: Gail Tighe, Esq.
Kevin P. McDole, Director, Information Technology
Edward Honauer, System Business Analyst
Todd M. Gleason, Esq.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Michael J. Hennel, President
Silver Software, Inc.
900 Oakmont Lane, Suite 400
Westmont, IL 60559

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature X Sharon Trader ☐ Agent ☐ Addressee

B. Received by (Printed Name) Sharon Trader

C. Date of Delivery 8-8

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label) 7004 1160 0002 4010 1393

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

W. Crimp (ALT.Cds Misc.)

7004 1160 0002 4010 1393

| | |
|---|---|
| Postage | $ .60 |
| Certified Fee | 2.30 |
| Return Reciept Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.65 |

Postmark Here: PROVIDENCE RI MAIN PO WINDOW UNIT USPS AUG 5 2005

Sent To: Michael J. Hennel, President
~~Silver Software, Inc.~~
Street, Apt. No.; or PO Box No.: 900 Oakmont Lane, Suite 400
City, State, ZIP+4: Westmont, IL 60559

PS Form 3800, June 2002 See Reverse for Instructions

# State of Rhode Island and Providence Plantations

## SUPERIOR COURT

Mike
401

[x] PROVIDENCE/BRISTOL [ ] KENT [ ] WASHINGTON [ ] NEWPORT

CIVIL ACTION, FILE No. ....................

A.T. CROSS COMPANY
**Plaintiff**

SILVON SOFTWARE, INC.
**Defendant**

***Summons***

*To the above-named Defendant:*

SILVON SOFTWARE, INC.
Through its Agent for Service of Process
BFKPN CORPORATE SERVICES
333 W. Wacker Drive, STE 2700
Chicago, Illinois 60606

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon William R. Grimm, Esq. Plaintiff's attorney, whose address is ~~HINCKLEY, ALLEN & SNYDER LLP~~ 1500 Fleet Center, Providence, RI 02903 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

[signature]
CLERK

Dated: December 7, 2005

(Seal of the Superior Court)